IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRELL TURPIN, :
    Plaintiff :
  : No. 1:17-cv-02226
v. :
  : (Judge Kane)
THOMAS McGINLEY, et al., :
    Defendants :

**MEMORANDUM**

Before the Court is pro se Plaintiff Terrell Turpin ("Turpin")'s complaint filed pursuant to 42 U.S.C. § 1983 (Doc. No. 1), motion to proceed in forma pauperis (Doc. No. 2), and motion to appoint counsel (Doc. No. 10). For the reasons set forth below, the Court will grant Turpin's motion to proceed in forma pauperis, deny his motion to appoint counsel without prejudice, and dismiss the complaint in part and permit Turpin leave to amend.

**I. BACKGROUND**

On December 5, 2017, Turpin, an inmate presently confined at the Somerset State Correctional Institution in Somerset, Pennsylvania, initiated a pro se civil action against Defendants pursuant to 42 U.S.C. § 1983 on December 5, 2017. (Doc. No. 1.) Named as Defendants are several employees from the State Correctional Institution at Coal Township ("SCI-Coal"): Superintendent McGinley ("McGinley"), correctional officers Kelly, Henning, Stout, and Corrections Health Care Administrator Marritt-Scully ("Marritt-Scully"). (Id.) The allegations contained in the complaint stem from alleged incidents that occurred while Turpin was housed at SCI-Coal. (Id.)

Plaintiff alleges that while he was handcuffed behind the back, Kelly pushed him down the steps in the Restricted Housing Unit ("RHU") of SCI-Coal. (Id.) From a grievance attached to Plaintiff's complaint, it appears that this incident allegedly took place on July 28, 2017. (Id. at

1

14.) Plaintiff alleges that this conduct was "willfully, religiously [and] sudisticly (sic) done," and that it constitutes retaliation. (Id. at 2-3.) Next, Plaintiff alleges that Stout witnessed Kelly push Plaintiff down the steps and that Stout "had prior knowledge that [] Kelly was [going to] push [Plaintiff] down the steps" because he was retaliating against Plaintiff. (Id. at 3.) Plaintiff also avers that Henning witnessed Kelly push him down the steps, and that Henning "conspired with the assault that [] Kelly carried out." (Id. at 6.)

With regard to Marritt-Scully, Plaintiff alleges that she failed to provide him with proper medical treatment and denied him copies of his sick calls, which he had requested. (Id. at 3.) While the complaint is silent as to what medical treatment Plaintiff was allegedly denied, a review of the grievances attached to the complaint indicates that Plaintiff asserts that on one occasion, he did not receive Tylenol when he requested it. (Id. at 21-23.) Plaintiff also vaguely alleges that other medical staff denied him proper medical attention but fails to elaborate on this allegation. (Id. at 3.)

Finally, as to McGinley, Plaintiff claims that McGinley "failed to take action [and] rectify [his] complaints." (Id.) Plaintiff avers that he wrote "multiple request slips" informing McGinley that he was being retaliated against, but that McGinley took no action. (Id. at 6-7.) Plaintiff also alleges that McGinley retaliated against him when McGinley replied to one of Plaintiff's requests concerning the step incident and stated that the video surveillance footage demonstrates that Plaintiff purposefully fell down the steps. (Id. at 7.)

## II.  LEGAL STANDARD

### A.  Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

2

governmental entity." 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted).

### B.     42 U.S.C. § 1983 Standard

Plaintiff has asserted claims against Defendants pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at 1.) In order to state a viable claim under § 1983, a plaintiff must plead: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that said

4

conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., Civ. No. 08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).  Therefore, supervisors cannot be liable under § 1983 under the traditional standard of respondeat superior.  Santiago, 629 F.3d at 128.  Instead, there are two theories of supervisory liability that are applicable to § 1983 claims:  (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

### III. DISCUSSION

#### A. Whether Plaintiff's Official Capacity Claims are Barred by Eleventh Amendment Immunity

Plaintiff has brought suit against all named Defendants in their official capacities.  (Doc. No. 1 at 5.)  A state official sued in his or her official capacity is not a "person" for purposes of § 1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity.  Will v. Mich. Dep't of State

Police, 491 U.S. 58, 63-71 (1989). Will precludes actions for damages against state officials acting in their official capacities. Id. at 63-71. However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. Ex parte Young, 209 U.S. 123 (1908); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002). Consequently, the Court will dismiss all claims asserted against Defendants in their official capacities with prejudice.

### B. Plaintiff's Claims of Eighth Amendment Violations

Liberally interpreting Plaintiff's pleading, the Court construes Plaintiff's complaint as alleging claims of deliberate indifference to a serious medical need and excessive force under the Eighth Amendment. See Estelle, 429 U.S. at 106.

#### i. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corrs., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official (1) knows of a prisoner's need for medical treatment and intentionally withholds it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference. Pearson, 850 F.3d at 535;

7

Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The inquiry is thus "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants." Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty., 834 F.2d at 347. Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id. For example, courts have indicated that minor abrasions, even those involving bleeding, do not rise to the level of objectively serious medical needs. See Wisneski v. Denning, Civ. No. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

While Plaintiff's complaint is silent as to what medical care Plaintiff was allegedly deprived of by Marritt-Scully, the Court infers from the grievances attached to his complaint that Plaintiff is alleging that Marritt-Scully failed to provide him with a single dose of Tylenol on one occasion when he requested it. (Doc. No. 1 at 21-23.) Plaintiff's allegation, which consists of only one sentence, fails to set forth a viable Eighth Amendment claim for deliberate indifference to a serious medical need, or that Marrit-Scully exhibited any deliberate indifference to Plaintiff's alleged serious medical need. See Farmer, 511 U.S. at 834. Taking Plaintiff's allegation as true, the Court concludes that this one instance of not receiving Tylenol is not sufficiently serious to rise to the level of an Eighth Amendment violation. See Kuehner v. Myer, Civ. No. 08-1319, 2010 WL 4788049, at *10 (W.D. Pa. Oct. 12, 2010) (providing that deliberate

indifference does not exist when a plaintiff did not receive medication for four days and that the Eighth Amendment does not require that a prisoner be provided with every medical treatment he requests).

Moreover, the Court finds Plaintiff's complaint runs afoul of Federal Rule of Civil Procedure 8(a), which requires the pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2); see also Saltzman v. Indep. Blue Cross, 634 F. Supp. 2d 538, 544 (E.D. Pa. 2009) ("The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted."). Here, in addition to setting forth a vague assertion against Marritt-Scully, Plaintiff alleges that "other medical staff denied [him] proper medical attention . . . like Doctor McClock [and] P.A. Nacolle Burgaslaw." (Doc. No. 1 at 3.) However, Plaintiff does not provide any additional allegations regarding what medical attention of which he was allegedly deprived. Moreover, neither McClock nor Burgaslaw are named defendants in this matter. (Doc. No. 1.) Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need against Marrit-Scully without prejudice.[1]

      **ii.    Plaintiff's Excessive Force Claim**

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000).

---

[1] The dismissal is without prejudice in the event that the Court has misconstrued Plaintiff's allegation and Plaintiff is attempting to assert a deliberate indifference claim with regard to facts other than those concerning not receiving Tylenol on one occasion.

The standard for whether one has an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 2 (1992)).

The Supreme Court has noted the following factors to determine whether a correctional officer used excessive force in contravention of the Eighth Amendment, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 319; see also Giles, 571 F.3d at 327.

While the Court is mindful that not every push or shove violates the Eighth Amendment, Ostrander v. Horn, 145 F. Supp. 2d 614, 618 (M.D. Pa. 2001), the Court equally recognizes that the use of force by prison officials "to cause harm maliciously and sadistically" violates "contemporary standards of decency." See Wright v. Goord, 554 F.3d 255, 268-69 (2d Cir. 2009); see also Hudson, 503 U.S. at 9-10. The Court concludes that Plaintiff has stated an Eighth Amendment claim of excessive force against Kelly so as to survive screening. Plaintiff has alleged that while he was handcuffed with his hands behind his back, Kelly intentionally pushed him down the steps in the RHU. (Doc. No. 1. at 2.) See Breeland v. Fisher, Civ. No. 12-

84, 2012 WL 5296488, at *8 (M.D. Pa. Oct. 4, 2012) (finding that the plaintiff pled fact sufficient to state a claim upon which relief can be granted at the judgment on the pleadings stage when the plaintiff pled that he was assaulted and shoved without provocation by staff while he was in restraints). Accordingly, this claim proceeds through screening.[2]

### C. Plaintiff's First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity alone support an inference of causation. Krouse v. Am. Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

---

[2] At this juncture, the Court cannot conclude that this claim should be dismissed as frivolous or for failure to state a claim upon which relief may be granted pursuant to the screening provisions of the Prison Litigation Reform Act. See 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court's conclusion does not prevent Kelly from filing a Rule 12(b)(6) motion.

11

In the instant action, Plaintiff's complaint is devoid of any allegations as to the constitutionally protected activity in which he was allegedly engaged and the reason for the alleged retaliation against him. Moreover, the complaint is in violation of Federal Rule of Civil Procedure 8(a), which requires the pleading to contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint lacks any plain statement showing that his is entitled to relief. (Doc. No. 1 at 1-4.) Accordingly, the Court will dismiss Plaintiff's retaliation claim without prejudice.[3]

### D. Plaintiff's Conspiracy Claim

"To state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Eichelman v. Lancaster Cty., 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007) (citing Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)). "To demonstrate the existence of a conspiracy under section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009) (quoting Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003)). Thus, a claim for conspiracy under § 1983 requires the plaintiff to make "factual

---

[3] Plaintiff is cautioned that while he names McGinley as a Defendant, in order to be liable under § 1983, a supervisor must have "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations" or "show that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K., 372 F.3d at 586. Plaintiff must plausibly allege supervisory liability or personal involvement in the constitutional violations as to McGinley in order for his complaint to state a claim on which relief can be granted regarding his claims against McGinley. Plaintiff has not done so, however. Therefore, McGinley is dismissed from this action without prejudice.

12

allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)). It is "not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Savage v. Judge, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (quoting Eichelman v. Lancaster Cty., 510 F. Supp. 2d 377, 392-93 (E.D. Pa. 2007)).

The Court concludes that Plaintiff's bare, conclusory allegations of a conspiracy to retaliate are clearly inadequate to state a cognizable conspiracy claim. See Flanagan v. Shively, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993) (providing that plaintiff's "allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each [d]efendant allegedly played in carrying out those objectives" and that "[b]are conclusory allegations . . . will not suffice"). In the instant action, Plaintiff does not specify any role or agreement among Defendants in the alleged conspiracy. (Doc. No. 1 at 2-7.) He does not provide specific factual allegations of an agreement, combination, or understanding among the Defendants to plot, plan, or conspire to carry out the alleged events that led to alleged violations of his constitutional rights. Accordingly, the Court will dismiss Plaintiff's conspiracy claim without prejudice.

### E. Whether the Court Should Permit Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a court dismisses a claim that is merely deficient. See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). A court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. A court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court concludes that Plaintiff should be permitted leave to amend his complaint. However, Plaintiff will not be granted leave to amend his official capacity claims, as they are barred by Eleventh Amendment Immunity. Should Plaintiff elect to file an amended complaint, he is advised that the amended complaint must be complete in all respects. It must be a new pleading which stands by itself without reference to the original complaint, exhibits, or any other documents already filed. The amended complaint should set forth his claims in short, concise and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim. Importantly, should Plaintiff elect to file an amended complaint, he must re-plead every cause of action in the amended complaint that the Court has found to be adequately pled in the current complaint because the amended complaint will supercede the original complaint. See Knight v. Wapinsky, Civ. No. 12-2023, 2013 WL 786339, at *3 (M.D. Pa. Mar. 1, 2013) (stating

that an amended complaint supercedes the original complaint). Because an amended complaint supercedes the original pleading, all causes of action alleged in the original complaint that are omitted from the amended complaint will be deemed waived. Id. (citations omitted).

### F. Plaintiff's Motion to Appoint Counsel

In support of his motion to appoint counsel (Doc. No. 10), Plaintiff alleges that he is unable to afford counsel, that his imprisonment will greatly limit his ability to litigate this action, that the issues involved in this action are complex but he has only limited library access and knowledge of the law, that a trial will likely involve conflicting testimony, and that he has made repeated, unsuccessful efforts to obtain counsel. (Id.)

Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include the plaintiff's ability to present his case, the complexity of the legal and discovery issues in the case, the amount of factual investigation that will be required, the necessity of expert witnesses, and whether "witness credibility is a key issue." Id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'"

15

Nunuez v. Wetz, Civ. No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (citing Montgomery, 294 F.3d at 501).

In the present case, the Tabron factors do not warrant appointing counsel at this time. Plaintiff is proceeding on claims of deliberate indifference to a serious medical need and excessive force. The legal issues present in this action are not complex, and Plaintiff has the apparent ability to litigate this action pro se, as he has managed to set forth arguments in his complaint, file a motion to proceed in forma pauperis, and file a motion to appoint counsel thus far. Additionally, this Court's duty to construe pro se pleadings liberally, Riley v. Jeffes, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militate against the appointment of counsel at this time. Therefore, the Court declines to appoint counsel for Plaintiff. However, in the event that future proceedings demonstrate a need for counsel, the Court may reconsider this matter sua sponte or upon a motion properly filed by Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed in forma pauperis (Doc. No. 2), is granted. Plaintiff's motion to appoint counsel (Doc. No. 10), is denied without prejudice. Plaintiff's complaint (Doc. No. 1), is dismissed in part for failure to state a claim upon which relief may be granted. The Court will defer service of the original complaint to give Plaintiff an opportunity to file an amended complaint within thirty (30) days from the date of the Order filed concurrently with this Memorandum. An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania